No. 19,500.

MATTEYS OPLOTNIK, *Appellee*, v. THE CHEROKEE &
PITTSBURG COAL & MINING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

PERSONAL INJURIES—*Coal Mining—Gas Explosion—Negligence
—Contributory Negligence.* The record examined and held
sufficient to sustain an award of $800 to a miner injured by
an explosion of gas, the presence and extent of which were only
guessed at by the fire inspector, notwithstanding the miner's
contributory negligence.

Appeal from Crawford district court; ANDREW J.
CURRAN, judge. Opinion filed May 8, 1915. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A.
Scott,* all of Topeka, for the appellant.

*Arthur Fuller, W. J. True,* and *L. W. Johnson,* all of
Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff worked as a miner for
the defendant. By statute and custom it is the duty
of the fire boss to visit the mine each morning to in-
spect for gas or fire damp. If there is some gas, he
makes a cross mark on some object where it may be
seen, to indicate the presence of gas, and that means
that the miner is to be careful and to keep the light
down off his head. Two cross marks mean that there
is more danger, to keep the light off the cap and to
work carefully. Three marks mean that the miner
must stay out until the fire boss arrives.

On the 7th of May, 1912, the plaintiff worked in a
room in spite of the fact that three marks had been
put up by the fire boss. There was a fault or hummock
in the mine, known as a "horseback," where there was
no coal, but which had to be opened or pierced to get
through to the coal beyond. It was the duty of the

35—95 KAN.

miner, the plaintiff, to pierce an opening through the horseback so that the fire boss could get through. The fire boss testified that the miner failed to do that, and the next morning he could not get through to inspect for gas, so he put two cross marks in front of the excavation. The miner and another witness say that it was possible to go through, and he did go through, put his lamp down on the floor some distance away, and after working for a time found the air bad and picked up a piece of canvas and began to fan the gas or fire damp out of the place where he was working. This gas or fire damp is lighter than air and would naturally be located at the roof of the mine. The miner fanned the gas and drove it ahead of him through the place, and when it came in contact with his miner's lamp on the floor at some distance an explosion occurred which injured him.

He brought an action for damages against the company, alleging:

"That the said defendant was negligent in this to wit: That the said mine was a mine which generated fire-damp and gas, which was well known to the said defendant; and that the said defendant did not introduce into said mine a sufficient amount of air to dilute the standing gas and render the same harmless; and that the said room was not examined by a competent person with a safety lamp upon the morning of the happening of the said accident, before this plaintiff was permitted to enter said room; or if the said room was examined upon the morning of the happening of the said accident by a competent person with a safety lamp, that such person failed, neglected and refused to indicate by marks or otherwise to this plaintiff, that gas was present in such room to a dangerous degree."

The district court properly instructed the jury concerning contributory negligence in diminution of damages, and the jury returned a verdict for the plaintiff and made special findings of fact.

Just two propositions are urged in the assignment of errors. (1) that the plaintiff's injuries were caused

solely by his own negligence; and (2) that some of the findings are contrary to the evidence.

We can not say that the defendant was injured solely by his own negligence. Only two crosses were made by the fire boss. The miner was negligent in fanning the gas towards his lamp, but apparently the jury took that into account in the award of damages. The fire inspector admitted that he had not inspected that part of the room beyond the horseback because the miner had not prepared a way for him to get beyond it. This the miner denies; but even so, the two crosses were a mere guess as to the extent of the gas beyond the horseback. The miner might have been disciplined for neglecting to pierce an ingress for the inspector if he failed in that duty. The negligence of the miner did not excuse the negligence of the inspector. Neither did the disobedience of the miner the day before, in disregarding the three crosses, affect the matter. If a servant disregards his master's orders the master has his remedy, but the penalty for disobedience one day is not to be blown up the next by the negligence of an inspector who does not take the trouble to make a proper inspection.

The testimony, some of it at least, tended to support the material findings, and none of these is inconsistent with the controlling finding:

"Q. 7. State in what particular you find that the defendant willfully failed in any duty which it owed to the plaintiff. A. Negligence of the fire boss not making proper examination of Room No. 18 on the morning of 8th day May, 1912."

The plaintiff was seriously injured; the award was only $800; and the result should not be disturbed.

Judgment affirmed.